UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REGINALD DUPREE,                                             :

                   Petitioner,      :      **MEMORANDUM DECISION**

               - v -                           :      20-CV-1443 (DC)

M. ROYCE, Superintendent,                              :

                Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


APPEARANCES:                    REGINALD DUPREE
                                Petitioner *Pro Se*
                                Green Haven Corrections
                                P.O. Box 4000
                                Stormville, NY 12582

                                LETITIA JAMES, Esq.
                                Attorney General of the
                                State of New York
                                By:    Michelle Maerov, Esq.
                                       Assistant Attorney General
                                28 Liberty Street, 14th Floor
                                New York, New York 10005
                                       Attorney for Respondent

CHIN, Circuit Judge:

        On October 5, 2015, following a bench trial, Petitioner Reginald Dupree

was convicted in the Supreme Court of the State of New York, Queens County (Latella,

*J.*), of first-degree robbery, second-degree robbery, leaving the scene of an incident

without reporting, third-degree falsely reporting an incident, and two counts of second-degree criminal possession of a weapon.  The Appellate Division, Second Department, affirmed his convictions, *People v. Dupree*, 93 N.Y.S.3d 872 (2d Dep't 2019) ("*Dupree I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Dupree*, 126 N.E.3d 192 (2019) (Fahey, J.) ("*Dupree II*").

On March 17, 2020, Dupree filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  Dkt. 1.  Respondent, represented by the New York State Attorney General's Office, filed its opposition to the Petition on June 1, 2020.  Dkt. 7.  On September 23, 2020, Dupree asked this Court to stay the Petition pending the state court's resolution of his motion to vacate his conviction.  *See* Dkt. 12, as supplemented by Dkts. 14 & 16.  The Court denied Dupree's request.  Dkt. 17.  On December 10, 2021, the Court dismissed ground five of the Petition alleging ineffective assistance of counsel because it was unexhausted.  Dkt 18.[1]

On October 25, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

---

[1] Although the Court concluded that Dupree's only unexhausted claim was his ineffective assistance claim, Dkt. 18, as discussed *infra*, Dupree's two claims challenging the grand jury process were also unexhausted and are procedurally barred.

## STATEMENT OF THE CASE

**A.**     *The Facts[2]*

The evidence at trial established the following:

In late February 2011, Dupree and his then-girlfriend Indya Gibbs, both residents of North Carolina, took a road trip to New York in a red 2010 Nissan Altima, rented by Dupree's stepfather.  *See* Dkt. 7-3 at 351, 357; Dkt. 7-2 at 45.

On their second day in New York, Dupree and Gibbs drove the Altima to a house in the Van Wyck neighborhood to pick up a package.  Dkt. 7-3 at 365-66; Dkt. 7-2 at 50.  As Gibbs waited in the car, Dupree walked up to the house and picked up a brown paper bag.  *Id.*  Although she was not aware at the time, Gibbs later learned the bag contained a gun.  *Id.*  The two then drove to Dupree's aunt's house in Brooklyn. Dkt. 7-3 at 361-62.  Later that night, under Dupree's direction, Gibbs drove Dupree to an area in Queens near the Van Wyck Expressway.  *Id.* at 362-63.  Dupree instructed Gibbs to go into two separate corner stores and see who was inside.  *Id.*  To not seem too obvious, Dupree instructed Gibbs to purchase some toilet paper and a pack of gum.  *Id.* Gibbs did as she was told.  *Id.*

---

[2] The facts are drawn from the People's brief on the direct appeal to the Appellate Division, which was filed in this Court as part of Respondent's Opposition to the Petition.  The recitation of facts set forth in the state appellate brief are supported by detailed citations to the record, including the trial transcript.  *See* Dkts. 7-2, 7-3.

Dupree then directed Gibbs to drive to a nearby liquor store called JFK Liquors, which was located at 131-09 Hillside Avenue. *Id.* at 269, 364. Dupree instructed Gibbs to continue to drive and circle the block, which she did five to six times, passing the liquor store each time. *Id.* As Gibbs drove around the block, Dupree instructed her to relax, stay calm, and be cool. *Id.* Although she was unfamiliar with the area, Gibbs specifically remembered a Burger King across the street from the liquor store. *Id.*

Eventually, Gibbs parked the Altima a block up from the liquor store and switched seats with Dupree. *Id.* at 365. Dupree then opened the brown paper bag that he picked up earlier that day. *Id.* From the paper bag, Dupree removed a sock and then, from inside the sock, a gun. Dupree checked the gun to make sure that it was loaded and again instructed Gibbs to relax and be cool. *Id.* at 366. Dressed in a red and black plaid shirt, black hat, and jeans, and armed with the gun, Dupree got out of the Altima and approached the liquor store. *Id.* Gibbs remained in the car. *Id.*

When Dupree entered the store, workers Angelica Munoz and Nwang Sherpa were sitting behind the register. *Id.* at 272. It was approximately 9:00 p.m., nearing closing time, and no customers were inside. *Id.* Dupree pulled out the gun, placed it to Munoz's head, and stated that she had ten seconds to give him the money from inside the registers. *Id.* at 275. Munoz quickly took money out of two registers and handed it to Dupree. *Id.* at 276. Dupree stuffed the money into his plastic bag and

4

ran out of the store.  *Id.*  Although Sherpa and another co-worker tried to chase after Dupree, he was able to get away.  *Id.* at 285.

The robbery was captured on surveillance video.  *Id.* at 278. Approximately ten minutes after he had left Gibbs to enter the liquor store, Dupree ran back to the Altima and jumped in the driver's seat, holding the gun and the cash stolen from the store.  *Id.* at 367.  He placed the gun in a compartment that snapped open underneath the gear shifter and glove compartment by the floor of the car and started counting the bills that he had stolen.  *Id.* at 367-68.  Dupree then drove for ten minutes to a nearby Popeye's restaurant and briefly met with a third party, before driving Gibbs back to his aunt's house in Brooklyn.  *Id.* at 369.  Dupree left; he did not stay the night with Gibbs at his aunt's house, and Gibbs did not hear from him until the next morning. *Id.* at 370-71.

At 9:45 the next morning, retired New York City Police Department ("NYPD") Detective Hans Cajuste was driving a Honda Pilot westbound on the Belt Parkway service road and making a right turn onto 135th Street when his car was struck by Dupree in the red Nissan Altima.  *Id.* at 330-31.  After the initial collision, both Cajuste and Dupree got out of their respective cars.  *Id.* at 332.  Cajuste observed that Dupree was a black male, approximately six feet tall, and wearing a multicolored shirt. *Id.* at 333.  He also noticed that the red Altima had damage to the left quarter panel and driver's side and had an out of state license plate.  *Id.*  Cajuste called 911, and as he was

5

on the phone with the operator, Dupree ran away from the scene on foot. *Id.* at 334. Police Officers Joseph Riccio and Richard Gonzalez arrived at the scene of the accident roughly an hour after Dupree left and took down Cajuste's report. *Id.* at 335.

Dupree soon after arrived at his aunt's house in a cab to pick up Gibbs. *Id.* at 371. As Dupree approached the house, he called Gibbs to tell her to come outside, that he had just gotten into an accident with the Altima, and that he needed Gibbs to file a false report that the rental car was stolen. *Id.* Gibbs then got in the cab with Dupree, and they headed to Rockaway Boulevard. *Id.* at 372. During this cab ride, Gibbs called the police as instructed, telling them that she had gotten out of her car and crossed Rockaway Boulevard to look at a nail salon when a tall black man stole her red 2010 Altima. *Id.* at 373-74.

When Gibbs and Dupree arrived at Rockaway Boulevard, they met with Dupree's friend, Pepsi. *Id.* at 372. Gibbs got into Pepsi's car, and the two of them followed Dupree, who was still in the cab, to the scene of the accident. *Id.* at 373. Gibbs walked up to the Altima, and Officers Riccio and Gonzalez, who were still at the scene, informed her that she could not go in the car because it was reported stolen. *Id.* at 374. When Gibbs claimed that she was the owner of the car, the officers questioned how she knew where her stolen car would be. *Id.* Because Gibbs could not answer any questions about the circumstances dealing with the Altima rental car, the police took her to the precinct for further questioning. *Id.*

6

At the precinct, after being given her *Miranda* warnings, Gibbs initially stated that she did not call in the false report. *Id.* When the police pushed back, however, Gibbs conceded that she did call in the report. *Id.* at 375. Gibbs also admitted to what she and Dupree did the night before, from casing the two corner stores, to her observations of Dupree immediately before and after the robbery of JFK Liquors. *Id.* at 376. She informed the police exactly where Dupree placed the gun that he used during the robbery -- it was in the compartment under the gear shifter. *Id.* at 375. After learning of this information, Officer Riccio recovered a 9mm Luger pistol, which had one bullet in the chamber and three in the magazine, from the compartment underneath the gear shifter where Gibbs said it would be. *Id.* at 431. Officer Riccio arrested Gibbs. *Id.* at 439.

Subsequently, Detective Warren Duryea, who worked for eight years as a firearms examiner for the NYPD Crime Laboratory, tested the operability and identification of the 9mm pistol that Officer Riccio recovered from Dupree's Altima rental car. *Id.* at 315. After itemizing and testing all of the pistol's components, Duryea concluded that the pistol and the accompanying magazines were operable. *Id.* at 317.

The Queens County South Evidence Collection Team tested the pistol for latent prints, and the results came back negative. *Id.* at 443. The Office of the Chief Medical Examiner also tested the pistol for DNA, and the results indicated that there was an insufficient amount of DNA for analysis. *Id.*

7

**B.      Procedural History**

      **1.      State Court Proceedings**

          **a.  The Trial Court**

Dupree was charged with two counts of first-degree robbery, one count of second-degree robbery, two counts of second-degree criminal possession of a weapon, leaving the scene of an incident without reporting, and falsely reporting an incident in the third degree.  At trial, Gibbs, Munoz, and Cajuste testified for the People.  *See generally* Dkt 7-3.  Officer Riccio also testified about the car accident and described his interaction with Gibbs when she arrived at the scene.  *Id.*  Duryea testified for the People as well, explaining her findings about the operability and identification of the gun.  *Id.*  The People admitted the gun into evidence, as well as the surveillance video of the robbery.  *Id.* at 258.  At the close of the People's case, the court granted defense counsel's motion to dismiss one of the first-degree robbery counts -- that charged that Dupree was armed with a deadly weapon when he robbed the liquor store.  *Id.* at 448.  Only Dupree testified for the defense.  *Id.* at 449.  He testified that he was not in the Altima during the robbery or the accident; rather, he contended, it was his cousin Rakeith Johnson who was in the car both times.  *Id.* at 449-493.

The court convicted Dupree on the remaining counts.  *Id.* at 516.  The court found that Gibbs's testimony was credible and corroborated by substantial evidence, including the surveillance video and the testimony of other witnesses at trial.

*Id.* It also concluded that Dupree's testimony was not credible. *Id.* The court

determined that Dupree was a violent predicate felon under New York Penal Law §

70.04 and sentenced him to concurrent determinate prison terms of fifteen years'

incarceration on the first-degree robbery conviction, twelve years' incarceration on the

second-degree robbery conviction, ten years' incarceration on each of the second-degree

criminal possession of a weapon convictions, time served on the leaving the scene

conviction, and one year incarceration for falsely reporting an incident. *Id.* at 528.

These sentences were to run consecutively to an unrelated ten-year sentence. *Id.* The

court also imposed five years' post-release supervision on three of the counts, to run

concurrently. *Id.*

### b. The Direct Appeal

On May 31, 2018, Dupree, represented by counsel, appealed to the

Appellate Division, Second Department, arguing that the verdict was against the weight

of evidence and the sentence was excessive. On March 13, 2019, the Appellate Division

affirmed Dupree's convictions and his sentence, holding that the guilty verdict was not

against the weight of the evidence and the sentence was not excessive. *Dupree I*, 93

N.Y.S.3d at 872. Thereafter, the New York Court of Appeals denied Dupree's

application for leave to appeal. *Dupree II*, 126 N.E.3d at 192.

### c. *The Coram Nobis Application*

On November 13, 2019, Dupree applied to the Appellate Division for a writ of error *coram nobis*, arguing that he received ineffective assistance of appellate counsel because appellate counsel failed to challenge aspects of the grand jury proceeding on appeal.  Dkt. 7-2 at 95-175.  Dupree argued that, *inter alia*, appellate counsel failed to argue that the prosecutor presented false evidence to the grand jury (the gun recovered from Gibbs).  *Id.*  He further argued that he was denied the opportunity to testify before the grand jury and was improperly convicted of inclusory concurrent offenses.  *Id.*  On July 8, 2020, the Appellate Division, Second Department, denied the application, finding that Dupree failed to establish that he was denied effective assistance of appellate counsel.  *People v. Dupree*, 124 N.Y.S.3d 880 (2d Dep't 2020) ("*Dupree III*").

### 2.   *Proceedings in this Court*

On March 17, 2020, proceeding *pro se*, Dupree filed the Petition asserting that (1) his conviction was not supported by legally sufficient evidence because Gibbs's testimony lacked corroboration; (2) his sentence was excessive; (3) the prosecutor presented false evidence in the grand jury; (4) he was deprived of his right to testify before the grand jury; and (5) his trial counsel was ineffective for failing to (a) present testimony from an unidentified alibi witness; (b) object to the prosecution's presentation

of a witness that was not on their witness list; and (c) obtain unspecified Brady material.

Dkt. 1.

On June 1, 2020, the New York State Attorney General's Office filed its

opposition to the Petition.  Dkt. 7.

On September 23, 2020, Dupree asked the Court (Komitee, *J.*) to stay the

Petition so he could return to state court and file a motion to vacate his conviction.  He

sought to "exhaust all of [his] state remedies," including his ineffective assistance claim,

which he conceded he had not yet exhausted.  Dkt. 12.  On September 28, 2021, the

Court denied the motion to stay the Petition, allowing Dupree to proceed only with the

exhausted claims and noting that "dismissal of the entire petition would unreasonably

impair the petitioner's right to obtain federal relief."  Dkt. 17 at 6 (quoting *Rhines v.

Weber*, 544 U.S. 269, 277 (2005)).  The Court identified one claim -- ineffectiveness of trial

counsel -- as unexhausted, but as explained *infra* Section B.3, Dupree's third and fourth

claims were also unexhausted.

The Court gave Dupree thirty days to "either Show Cause why the court

should not dismiss his mixed petition in its entirety; or alternatively, submit an

amended petition omitting his unexhausted claim and proceeding with the exhausted

claims." *Id.* at 6.  Dupree did not respond to the Court's order, and on December 10,

2021, the Court dismissed the ineffective assistance claim.[3]  Dkt. 18.

On October 25, 2023, the case was reassigned to the undersigned.

### DISCUSSION

**A.**   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. ' 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

---

[3] Dupree's ineffective assistance claim fails on the merits in any event.  Dupree does not explain who his alibi witness would have been, nor whether their testimony would have been favorable to him.  He also does not identify the witness that the prosecution allegedly failed to disclose or address why he was prejudiced by his counsel's failure to object to their presentation.  And Dupree does not provide any detail about the *Brady* material his counsel should have obtained. These allegations, without more, are far too conclusory to provide a basis for habeas relief.  *See Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per

curiam).

       Moreover, "federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law

ground that is independent of the federal question and adequate to support the

judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S.

722, 729 (1991)).  A state law error is therefore insufficient for habeas corpus relief

unless it rises to a level that implicates a federal constitutional right.  *Wainwright v.

Goode*, 464 U.S. 78, 86 (1983) (per curiam).  Such error does not rise to the level of a

constitutional violation unless the petitioner can demonstrate that the error had a

"substantial and injurious effect or influence" on the jury's verdict.  *Headley v. Tilghman*,

53 F.3d 472, 474 (2d Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

       Finally, a federal court may not grant the habeas petition of a state

prisoner "unless it appears that the applicant has exhausted the remedies available in

the courts of the State; or that there is either an absence of available State corrective

process; or the existence of circumstances rendering such process ineffective to protect

the rights of the prisoner."  28 U.S.C. § 2254(b)(1).  To satisfy § 2254's exhaustion

requirement, a petitioner must present the substance of "the same federal constitutional

13

claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (internal citations and quotation marks omitted).

If a state court's decision regarding a claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment," the claim is procedurally barred, whether the state-law ground is substantive or procedural. *Coleman*, 501 U.S. at 729; *accord Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010). "When the petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted." *Aparicio*, 269 F.3d at 90. If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

B.      *Analysis*

I address the remaining claims of the Petition: (1) the conviction was not supported by legally sufficient evidence; (2) the sentence was excessive; (3) the prosecutor presented false evidence in the grand jury; and (4) Dupree was deprived of

his right to testify before the grand jury.  Dkt. 1.  I discuss the third and fourth claims together.

### 1.    *Insufficiency of the Evidence*

In his first claim for relief, Dupree argues that that the evidence against him was legally insufficient because Gibbs's testimony lacked the required corroboration under New York law.  The Appellate Division rejected this claim on the merits, holding that "the testimony of [Gibbs] was sufficiently corroborated."  *Dupree II*, 126 N.E.3d at 192.  The Appellate Division's conclusion is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned unless Dupree can establish that the decision was unreasonable, *see* 28 U.S.C. § 2254(d).  Dupree fails to meet this burden.

As a threshold matter, this claim is not cognizable on habeas review because it is not grounded in federal law.  *See Martinez v. Walker*, 380 F. Supp. 2d 179, 184 (W.D.N.Y. 2005) ("Petitioner's claim that the accomplice testimony was not sufficiently corroborated alleges purely a matter of state law, and is thus not cognizable on federal habeas corpus review.") (quoting *Mariani v. Kelly*, No. 97-CV-384 FJS/GLS, 2001 WL 1860961, at *4 (N.D.N.Y. Feb.2, 2001)).

This argument also fails on the merits.  New York law prohibits a conviction "upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission" of the crime.  N.Y.

Crim. Proc. § 60.22.  The corroborative evidence need only "connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth."  *People v. Daniels*, 339 N.E.2d 139, 142 (1975).  Corroborative evidence need not independently incriminate the defendant; rather, it must only "harmonize" with the testimony of the accomplice such that it makes the accomplice's testimony more likely to be true.  *People v. Reome*, 933 N.E.2d 186, 190 (2010).

   The evidence here established, among other things, that Gibbs went to the scene of the accident to claim that her car was stolen, even though she did not have an explanation as to how she knew the car was there.  Furthermore, Gibbs's description of the robbery matched the surveillance video and Munoz's description of what happened.  Gibbs's testimony was also corroborated when she informed the police exactly where Dupree placed the gun that he used during the robbery, and officers recovered the gun from that location.  This was more than sufficient evidence for the trial court to conclude that Gibbs's testimony was corroborated.  Accordingly, Dupree's first claim fails.

   **2.** ***Excessiveness of Dupree's Sentence***

   For his second claim, Dupree contends that his sentence of fifteen years' imprisonment is excessive considering his childhood trauma and history of mental illness.  The Appellate Division rejected this claim on the merits, finding that the sentence imposed was not excessive.  *See Dupree II*, 126 N.E.3d at 192 (citing *People v.*

*Suitte*, 455 N.Y.S.2d 675 (1982)).  This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d).  Dupree has not done so here.

There is "[n]o federal constitutional issue . . . presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  Dupree was adjudicated a violent predicate felony offender based on a 1999 conviction for armed robbery.  Accordingly, he faced up to twenty-five years in prison for his first-degree robbery conviction.  Dupree was only sentenced to fifteen years in prison, which was well within the range prescribed by state law.  Dupree's second claim therefore fails.

### 3.   *The Grand Jury Proceedings*

Turning to Dupree's two challenges of the grand jury process, they are -- as a threshold matter -- unpreserved and procedurally barred.  Dupree claims that the prosecutor introduced "false" and misleading evidence to the grand jury and that he was deprived of his right to testify to the grand jury.  But Dupree did not raise these claims on direct appeal, and accordingly, they are unexhausted and not ripe for habeas review.  *See Coleman*, 501 U.S. at 731.  And this analysis does not change because Dupree argued in his *coram nobis* motion that appellate counsel was ineffective for not including these claims on appeal.  *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (explaining

17

that an underlying state court error is not exhausted in such a situation because "[t]he constitutional deprivations alleged . . . could be advanced in a writ of error coram nobis *only as predicates for the claim of ineffectiveness*.") (emphasis added).

Because Dupree has no further avenue to pursue these constitutional claims in state court, they are also procedurally defaulted and barred. *See Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies *and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred*.'") (citation omitted). Dupree has not demonstrated cause or prejudice to overcome this procedural bar.

Even if these claims were exhausted and not procedurally barred, they still fail on the merits.   Dupree has not demonstrated that the trial court's adjudication violated his constitutional rights.  "Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." *Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002); *see Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (relying on *United States v. Mechanik*, 475 U.S. 66 (1986)).  Therefore, Dupree is not entitled to habeas relief on these grounds.

*CONCLUSION*

Dupree has failed to show a basis for relief under 28 U.S.C. § 2254.

Accordingly, his habeas petition is denied.  Additionally, I decline to issue a certificate

of appealability because Dupree has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment accordingly and close this

case.  The Clerk of Court shall also mail copies of this memorandum decision and the

judgment to Dupree at the address set forth above.

SO ORDERED.

Dated:     New York, New York
           December 27, 2023

s/ Denny Chin                          __
DENNY CHIN
United States Circuit Judge
Sitting By Designation